UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASALLE BANK NATIONAL ASSOCIATION
AS TRUSTEE,

       Plaintiff/Counter-Defendant,

vs.                                         Case No. 09-13526

RODERIC RAY and MATTIE RAY,

       Defendants/Counter-Plaintiffs          HON. AVERN COHN
_____/

RODERIC RAY and MATTIE RAY,

       Third Party Plaintiffs,

vs.

HOME LOAN SERVICES, INC.,

       Third Party Defendant
_____/

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF/COUNTER-DEFENDANT AND THIRD PARTY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 11)[1]**

I. Introduction

This is one of an increasing number of cases spawned from the collapse of the

housing market.  In 2006, Roderick and Mattie Ray borrowed $175,000.00 from First

Franklin Financial Corporation ("First Franklin"), a division of National City Bank, to

purchase a home in Detroit.  The loan was secured by a mortgage.  After the Rays

---

[1]The Court deems this matter appropriate for decision without oral argument.
See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

defaulted on the loan, Home Loan Services, Inc. ("HLS"), the servicer of the loan, foreclosed on the property. LaSalle Bank National Association ("LaSalle") purchased the property at the sheriff's sale. After the six month redemption period expired, LaSalle initiated eviction proceedings against the Rays in 36th District Court. In response, the Rays filed a counterclaim in the 36th District Court against LaSalle and a third-party claim against HLS, presenting the following claims:

Count I      violation of Michigan Brokers, Lender and Servicer Lending Act, M.C.L. § 445.1651

Count II     misrepresentation

Count IV[2]   violation of the Housing and Economic Recovery Act of 2008

Count V      bad faith

Count VI     violation of the Federal Home Affordable Modification Program the Economic Stabilization Act of 2008

Count VI[3]   wrongful foreclosure and quiet title

Count VII    exemplary damages

LaSalle and HLS removed the case to federal court on the grounds of diversity and federal question.

Before the Court is LaSalle and HLS's motion for summary judgment on the Rays' counterclaim/third-party claim. For the reasons that follow, the motion will be granted.

---

[2]The counterclaim/third-party claim does not contain a Count III.

[3]The counterclaim/third-party claim contains two "Count IVs"

2

II.  Background

On October 31, 2006, the Rays borrowed $175,000 from First Franklin to purchase a home in Detroit.  In connection with transaction, the Rays signed a 30 year, fixed rate Note and a Prepayment Addendum to the Note ("Note").  The Note required that the Rays make monthly payments beginning on December 1, 2006 of $1,673.18. The Note carried an 11.05%[4] interest rate, fixed for 3 years, and would adjusted after December 2009.  To secure the loan, the Rays also executed a Mortgage, as well as a Prepayment Rider to the Mortgage ("Mortgage").  The Mortgage granted "Mortgage Electronic Registration, Inc. ("MERS")," "acting solely as nominee for [First Franklin] and [First Franklin's] successor and assigns" a security interest in the property.  The Mortgage says that "MERS is the mortgagee under this Security Instrument."  First Franklin is listed as the "Lender" on the Mortgage.

After the closing, on December 6, 2007, MERS, acting a "nominee" for First Franklin, assigned its interest in the loan to "LaSalle Bank National Association as Trustee for First Franklin Mortgage Loan Trust . . ."  and LaSalle became the Trustee of the loan.  HLS became the service provider for the loan.  Both the Mortgage and the assignment were recorded.

The Rays made their first monthly payment in December 2006.  They missed their January 2007 payment but made a full payment in February 2007.

At the time the loan was made, Roderick Ray was in the military reserves.  In

_____

[4]The Rays say they recently learned they are part of a class in a class action case in California claiming that loans with this interest rate are discriminatory in violation of the Fair Housing Act.

3

February 2007, he was deployed to Iraq.  As a result, the interest rate on the Ray's loan was lowered, bringing the monthly payment down from $1,673.18 to $1,049.89.  The Rays made the new monthly payment from April to July, skipped August, and made a payment in September 2007.

In February 2008, Roderick Ray returned from Iraq.  At that time, the Rays were in default.  From February 2007 to March 2008, the Rays made only 9 monthly payments, the last payment being in March 2008.

In June 2008, Nathan Nevils, an advocate retained by the Rays who worked for the Money Store, emailed HLS stating that the Rays were looking to obtain a "short-pay off" and were "not looking to get into a modification."  Roderick Ray says Nevils was unsuccessful in being able to work with HLS.  Roderick Ray further says that he attempted to contact HLS, and the attorneys who handled foreclosures for HLS, to no avail.

HLS commenced foreclosure proceedings and scheduled a sheriff's sale for January 7, 2009.  LaSalle purchased the property at the sale.  The Rays had until July 28, 2009 to redeem; however, they took no action.

On July 30, 2009, LaSalle filed a complaint for eviction in 36th District Court.  On August 20, 2009, the Rays filed their answer, counterclaim and third–party claim in the eviction action.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of

4

material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set forth specific facts showing that there is a genuine issue for

trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the

material facts is not enough; "the mere existence of a scintilla of evidence" in support of

the nonmoving party is not sufficient to show a genuine issue of material fact.  <u>Anderson

v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must

present "significant probative evidence" in support of its opposition to the motion for

summary judgment in order to defeat the motion.  <u>Moore v. Philip Morris Co.</u>, 8 F.3d

335, 340 (6th Cir. 1993); <u>see</u> <u>Anderson</u>, 477 U.S. at 249–50.

IV.  Analysis

A.  Count I - Violation of the Michigan Mortgage Brokers, Lenders, and Servicers
Licensing Act, M.C.L. § 445.1651

In Count I, the Rays claim a violation of M.C.L. § 445.1651, the Michigan

Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA") against HLS.

HLS says that summary judgment is appropriate because the act does not apply to it

and even if it did, HLS did not engage in any fraud or misrepresentation.

The MBLSLA states:

It is a violation of this act for a licensee or registrant to do any of the following: (a)
Fail to conduct the business in accordance with law, this act, or a rule
promulgated or order issued under this act. (b) Engage in fraud, deceit, or
material misrepresentation in connection with any transaction governed by this
act.

5

M.C.L. § 445.1672.

The MBLSLA is not applicable to HLS.  By its terms, it does not apply to a "mortgage broker, mortgage lender, or a mortgage servicer that is a subsidiary or affiliate of a depository financial institution or a subsidiary or affiliate of a holding company of a depository financial institution, if the depository financial institution maintains its main office or a branch office in this state."  M.C.L. 445.1675(m).  HLS was owned by Merrill Lynch, which was owned by Bank of America, N.A. which is a "depository financial institution" under the MBLSLA because it is a nationally chartered bank that maintains offices in Michigan.  Accordingly, the Ray's claim against HLS for violation of the MBLSLA must be dismissed.  Accord Ridha v. Mortgage Electronic Registration Systems, Inc., No. 10-13824, 2010 WL 4867416 (E.D. Mich. Nov. 23, 2010).

The Rays, however, argue that section 1044 of Public Law 111-203[5] preempts M.C.L. § 445.1675(m).  The Rays appear to be referring to 12 U.S.C. § 25b which provides that "a State consumer financial law shall apply to a subsidiary or affiliate of a national bank (other than a subsidiary or affiliate that is chartered as a national bank) to the same extent that the State consumer financial law applies to any person, corporation, or other entity subject to such State law."  Even if the Rays are correct, 12 U.S.C. § 25b was not enacted until July 21, 2010, over a full year after this action was filed.  The Rays cite no authority that this section can be retroactively applied.

Finally, even assuming that the MBLSLA applies to HLS, this claim still fails.  As

---

[5]The Rays are referring to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111-203, 124 Stat. 1376.

explained below, the Rays have not made out an actionable claim for fraud or misrepresentation. As such, their MBLSLA claim fails. See Hanning v. Homecomings Fin. Networks, 436 F. Supp. 2d 865, 872 (W.D. Mich. 2006) (finding that MBLSLA claim was contingent on a fraud claim and dismissing the former when had already dismissed the latter).

### B. Count II - Misrepresentation

In Count II, the Rays claim misrepresentation. This claim fails for several reasons. First, Michigan law does not recognize claims to enforce oral promises against financial institutions. See Crown Technology Park v. D&N Bank, FSB, 242 Mich. App. 538 (2000) (applying Michigan's statute of frauds, M.C.L. § 566.132(2), to bar claims, regardless of how plead, against banks to enforce alleged oral promises to modify loans). Here, the Rays's claim is based on an alleged oral promise that their loan was being reviewed by HLS for a refinance or potential modification when HLS had no intent of working with them. As such, the claim is barred.

Second, under Michigan law, actionable fraud requires proof:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 114 (1981) (quoting Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976)). Additionally, "a promise regarding the future cannot form the basis of a misrepresentation claim." Forge v. Smith, 458 Mich. 198, 212, 580 N.W.2d 876, 884 (1998).

7

The Rays have not shown that HLS made a material representation that was false.  At best, HLS reviewed the Rays' request for modification and never indicated that a modification would be granted.  There is nothing in the record to show any misrepresentation by HLS.  Moreover, at best any alleged statement would be a promise to conduct a review in the future and cannot give rise to a viable misrepresentation claim.

Finally, the claim itself has not been properly plead with particularity as required by Fed. R. Civ. P. 9(b).  To meet the particularity requirements of Rule 9(b), the plaintiff must "specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Frank v. Dana Corp., 547 F.3rd 564, 569-570 (6th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters, 502 F.3d at 548 (quoting Bell Atlantic, 127 S.Ct. at 1964-65).

The Rays' allegations, found in ¶ 23 of their complaint, fail to meet these requirements.  At best, the allegations constitute recitations of the elements of fraudulent misrepresentation and negligent misrepresentation, and are thus insufficient. See Ass'n of Cleveland Fire Fighters, 502 F.3d at 548.

The Rays, however, argue that they plead a claim for fraudulent inducement. This argument does not save the claim.  Fraud in the inducement still requires a material misrepresentation, which has not been plead.  The claim is still barred by the statute of frauds and does not meet Rule 9's pleading requirements.

8

  C.  Count IV and Count VI - Violation of the Housing and Economic Recovery Act and violation of the Federal Home Affordable Modification Program

        In Counts IV and VI, the Rays claim violations of federal law.  Specifically, Count IV claims a violation of section 1403 of the Housing and Economic Recovery Act ("HERA") and Count VI claims a violation of the Federal Home Affordable Modification Program ("HAMP").  Each is premised on HLS's refusal to modify their loan.  These claims fail for two reasons.

        First, the statutes do not compel HLS to modify the loan.  HERA requires the Secretary of the Treasury "to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program."  12 U.S.C. § 5219.  While under the statute "the Secretary must encourage mortgage servicers to modify loans, the statute does not require Defendant or other mortgage servicers to modify loans."  Hart v. Countrywide Home Loans, --- F. Supp. 2d ----, 2010 WL 3272623, *5 (E.D. Mich. Aug. 19, 2010) (dismissing claims under HERA and HAMP); Escobedo v. Countrywide Home Loans, Inc., No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("The Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements."); Williams v. Geithner, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (concluding that loans may be modified where appropriate and with discretion).  Thus, even if the Rays were entitled to a modification, there would be no duty imposed on HLS for which they could seek relief.

        Second, even assuming the Rays were eligible for modification and assuming the statutes impose a duty on HLS to modify their mortgage, the statutes "do not create a

9

private right of action under which Plaintiff may seek relief." <u>Hart</u>, <u>supra</u>. <u>See also</u> <u>Aleem v. Bank of America</u>, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330, *4, 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010) ("There is no express or implied right to sue fund recipients ... under TARP or HAMP.); <u>Zendejas v. GMAC Wholesale</u> <u>Mortgage Corp.</u>, No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975 (E.D. Cal. June 16, 2010) (concluding that third-party beneficiaries cannot enforce government contracts "absent a clear intent to the contrary," and that HAMP expresses no such intent). Accordingly, the Rays' claims under HERA and HAMP fail.

### D.  Count V - Bad Faith

In Count V, the Rays claim bad faith.  They allege that HLS acted "arbitrary, reckless, and intentional" when it represented to the Rays that it was performing modification efforts.  The Michigan Supreme Court has held that where a plaintiff has "pleaded no more than defendant's bad-faith failure to pay its contractual obligation," the pleading is "insufficient to establish an independent tort action." <u>Isagholian v.</u> <u>Transamerica Ins. Corp.</u>, 208 Mich. App. 9, 17 (1994).  As the Rays have presented nothing more than allegations of bad faith in connection with alleged contractual obligations, this claim fails as a matter of law.

### E.  Count IV - Wrongful Foreclosure

In this Count, the Rays claim wrongful foreclosure and seek to quiet title against LaSalle.  This claim appears to be based on the notion that because LaSalle merged with Bank of America, it is not a legal entity and therefore the foreclosure is voidable. This claim fails.

First, the Mortgage identifies MERS as the mortgagee as well as the nominee for

10

the lender, First Franklin.  Under the Note, MERS, as mortgagee, had the right to foreclose on the property.  After the loan was closed, MERS assigned its rights to LaSalle.  The fact that LaSalle later merged with Bank of America is irrelevant.  As explained in LaSalle and HLS's papers, LaSalle and Bank of America were formed under the National Bank Act, 12 U.S.C. § 1.  Under that statute, which governed their merger, the corporate existence of LaSalle was merged into Bank of America.  See 12 U.S.C. § 212a.  LaSalle's interest in the loan were transferred to Bank of America, who could properly foreclose.

The Rays, however, now argue that MERS lacked authority to foreclose.  Putting aside this is a new ground not plead in the complaint, MERS did not foreclosure.  Rather, HLS, the service provider, foreclosed.  Moreover, Rays' argument that MERS could not assign its interest to LaSalle as Trustee is similarly misplaced.  The Mortgage grants MERS the power to assign, as it refers to the "successor and assigns of MERS."

Finally, the Rays argue that the foreclosure was wrongful because the notice was improper because it did not contain the name of the original mortgagee, First Franklin.  This argument is not well-taken.  The notice identifies the foreclosed mortgage as that "made by [the Rays], original mortgagor(s), to [MERS], as nominee for lender and lender's successors and assigns, Mortgagee . . . dated October 31, 2006 . . . and assigned by said Mortgagee to LaSalle Bank National Association as Trustee. . ."  Paragraph (C) of the Mortgage states that "MERS is the mortgagee under this Security Instrument."  Thus, the notice did comply with Michigan law by listing MERS as the mortgagee.  See M.C.L. § 600.3212.

11

F.  Count VII - Exemplary Damages

In Count VII, the Rays seek exemplary damages.  Michigan law provides that "absent allegations and proof of tortious conduct existing independent of [a breach of contract], exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract."  Kewin v. Mass. Mutual Life Ins. Co., 409 Mich. 401, 420-21 (1980).  Here, the Rays have alleged misrepresentation and violations of HERA, HAMP, and the MBLSLA as the underlying torts to support their claim for exemplary damages.  However, as explained above, none of these claims have merit.  As such, their claim for exemplary damages must fail.

G.  Expiration of Redemption Period

As LaSalle and HLS point out, another flaw in the Rays' claims regarding their mortgage is the fact that the claims were brought after their interest in the properly was extinguished.  Under Michigan law, legal title to a foreclosed property vests in the holder of the sheriff's deed unless the property is redeemed within the six-month statutory redemption period.  M.C.L. § 600.3236-.3240.  The redemption period and procedure are "clearly spelled out" by statute, and the right to redemption generally "can neither be enlarged nor abridged by the courts."  Gordon Grossman Bldg. Co. v. Elliott, 382 Mich. 596, 603, 171 N.W.2d 441, 444 (1969).  Michigan law specifies foreclosure procedures, "leaving no room for equitable considerations absent fraud, accident, or mistake." Senters v. Ottawa Sav. Bank, 443 Mich. 45, 55, 503 N.W.2d 639, 643 (1993).

Here, the sheriff's sale occurred on January 28, 2009.  The redemption period expired on July 28, 2009.  The Rays did not file their counterclaim/third-party claim until August 20, 2009.  Since the Rays have not established fraud, accident or mistake in the

12

mortgage or in the foreclosure proceeding and also failed to redeem the property, legal title to the property transferred to the holder of the sheriff's deed upon expiration of the redemption period.

Moreover, as to the their claim to quiet title, the Rays must meet the requirements set forth in M.C.R. § 3.411, or, for a federal cause of action, 28 U.S.C. § 2409a(d). These rules require that the plaintiff properly allege his or her ownership interest in the property.[6] Additionally, Michigan Law has held that if "[p]laintiffs did not avail themselves of their right of redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and to the property were extinguished." Piotrowski v. State Land Office Bd., 4 N.W.2d 514, 517 (Mich. 1942). '

Because the redemption period has expired, the Rays lack standing to assert any interest in the property. See M.C.L. § 600.3236; Piotrowski v State Land Office Bd., 302 Mich. 179, 187 (1942) ("Plaintiffs . . . lost all their right, title, and interest in and to the property at the expiration of their right of redemption . . . ."); Mission of Love v Evangelist Hutchinson Ministries, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr. 12, 2007) ("After the redemption period expired, plaintiff no longer had any right or interest in the property, because the property had been validly purchased at a foreclosure sale. At that point, the trial court could not grant plaintiff the relief it sought

---

[6] M.C.R. § 3.411(B) states, "(2) The complaint must allege, (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." 28 U.S.C. § 2409a(d) states,"[t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."

13

(title to the property) if it were successful in its suit.").

## V.  Conclusion

For the reasons state above, the Rays' claims fail as a matter of law.  That said, the Court is not unsympathetic to the Rays' situation, one which has befallen many. Unfortunately, there is no remedy in federal court under these circumstances. Accordingly, LaSalle and HLS's motion for summary judgment is GRANTED.

Within ten (10) days after entry of this order, LaSalle and HLS shall advise the Court in writing as to the status of this case, including the steps necessary to bring this matter to a close and whether this action should remain in federal court.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 9, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 9, 2011, by electronic and/or ordinary mail.


 S/Julie Owens
Case Manager, (313) 234-5160